UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JANE DOE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:15CV01484 AGF |
| MARTIN RAINEY, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This action was brought under 42 U.S.C. § 1983 by Plaintiff Jane Doe against Martin Rainey, a deputy sheriff for Gasconade County, Missouri; Randy Esphorst, Sheriff of the County; and Gasconade County. Plaintiff filed an eight-count amended complaint, claiming violations of rights secured under the Fourth and Fourteenth Amendments of the United States Constitution, as well tort claims under state law. Counts I and II are directed at Rainey claiming violations of Plaintiff's federal constitutional rights (Count I) and intentional infliction of emotional distress ("intentional infliction") (Count II). Counts III, IV, and V are directed at Esphorst claiming willful failure to supervise, intentional infliction, and negligent supervision, respectively. Counts VI, VII, and VIII are directed at Gasconade County claiming willful failure to supervise, intentional infliction, and negligent supervision, respectively.

Before the Court is Defendant Rainey's motion to dismiss Count II—which asserts a claim of intentional infliction against him. Rainey asserts the claim (1) is barred by the

1

statute of limitations, and (2) fails to state a claim upon which relief can be granted.  For the reasons set forth below, the motion shall be denied.

## BACKGROUND

Plaintiff alleges as follows: On or about July 14, 2012, she called the Gasconade County Sheriff's Department to inquire as to whether an ex parte (protection) order had been served on her estranged husband.  Rainey, a deputy sheriff, "came in[to] contact" with Plaintiff regarding the inquiry and obtained her address and cell phone information.  Between July 14, 2012, and August 6, 2012, Rainey called Plaintiff 87 times and sent her 1,288 text messages, many of which were sexually explicit.  Sometime after July 14, 2012, Rainey approached Plaintiff at her residence and made sexual advances towards her, including trying to kiss her while standing in the doorway to the residence.  After July 14, 2012, Rainey also threatened to arrest Plaintiff's husband in connection with an investigation Rainey was supposedly undertaking of him, although Rainey knew both the investigation and the arrest warrant to be fictitious.  With respect to the supposed investigation of Plaintiff's husband, Rainey informed Plaintiff that he would use his authority as a deputy sheriff to "make this all go away" if Plaintiff would engage in sexual intercourse with him.

Plaintiff further alleges that on August 4, 2012, Rainey picked her up at her apartment.  He was wearing his deputy sheriff's uniform, carrying a service-issued police firearm, and driving a Gasconade County patrol vehicle.  They went to a motel in Owensville, Missouri, where Rainey had directed Plaintiff to reserve a motel room in a fictitious name.  Once in the motel, Rainey provided Plaintiff with an opened can of soda,

which caused Plaintiff to feel "drugged."  He thereafter removed his service-issued police firearm from its holster and placed it on the nightstand next to the bed, with the barrel of the firearm pointing towards where Plaintiff was lying.  He then had nonconsensual sexual intercourse with Plaintiff, despite her resistance.

Count II incorporates by reference each of the facts as stated above, but specifically relies on only the time period from July 14 to August 2, 2012, and those facts leading up to, but not including, the alleged battery in the Owensville motel room.  Plaintiff claims that these actions were outrageous, intentional, and undertaken for the sole purpose of causing extreme emotional and physical distress to Plaintiff.  Plaintiff further alleges that she has suffered severe emotional injury as a result of these intentional and outrageous acts by Rainey and will continue to suffer such emotional injury in the future.

## ARGUMENTS OF THE PARTIES

Rainey first asserts that the intentional infliction claim against him (Count II) is governed and barred by the two-year statute of limitations of Missouri Revised Statute § 516.140 for sexual battery, because the claim is based on a sexual battery; the amended complaint cannot be read to infer that Rainey's conduct was intended solely to cause extreme emotional harm to Plaintiff; and the sexual battery serving as the basis of this count also serves as the basis for Count I.  Rainey argues that Count II should be dismissed for the additional reason that his alleged conduct leading up to, but not including, the sexual battery on August 4, 2012, does not rise to the level of outrageous

3

or extreme conduct, as required for an intentional infliction claim, because sexually explicit cell phone text communications are no longer considered rare or shocking.

Plaintiff responds that her intentional infliction claim is independent of the sexual battery that occurred on August 4, 2012. Rather, Plaintiff asserts that her intentional infliction claim against Rainey arises from Rainey's conduct in the 24 days leading up to the sexual battery, and that therefore, the five-year statute of limitations of Missouri Revised Statute § 516.120(4) for intentional infliction applies. Further, Plaintiff argues that Rainey's conduct during those 24 days was intended solely to cause emotional distress to Plaintiff, and was sufficiently extreme and outrageous in light of his authority position as a police officer and his abuse of that authority in threatening Plaintiff with the arrest of her husband.

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, which accepted as true, states a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Id.* This standard "calls for enough fact [sic] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.* at 555; *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Lukien Commc'ns, LLC*, 696 F.3d 766,

768-69 (8th Cir. 2012). A court must "'draw on its judicial experience and common sense,'" in considering the plausibility of the plaintiff's claim. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Missouri courts recognize the tort of intentional infliction. *See, e.g., Pretsky v. Sw. Bell Tel. Co.*, 396 S.W.2d 566, 568 (Mo. 1965). Under Missouri law, the elements of this tort are: "(1) the defendant's conduct must be outrageous or extreme; (2) the defendant must act intentionally or recklessly; (3) there must be extreme emotional distress that results in bodily harm; (4) caused by the defendant's conduct; and (5) the conduct must be intended solely to cause extreme emotional distress to the victim." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 119 (Mo. Ct. App. 2008). An intentional infliction claim can only be brought when the wrongful conduct itself is not an independent cause of action. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993) (upholding dismissal of an intentional infliction claim based solely on conduct giving rise to a slander claim). The statute of limitations for an intentional infliction claim is five years. Mo. Rev. Stat. § 516.120(4).

Rainey argues that the intentional infliction claim against him is barred by the two-year statute of limitations of Missouri Revised Statute § 516.140 for sexual battery, because the claim is based on a sexual battery. However, for this claim Plaintiff relies only upon Rainey's actions leading up to the sexual battery, actions which she alleges were intended solely for the purpose of causing extreme emotional and physical distress. (Doc. No. 27 at ¶ 41.) Therefore, the five-year statute of limitations for intentional infliction based on conduct independent of a battery claim applies and does not bar

Plaintiff's intentional infliction claim arising from conduct three and one-half years before the filing of this action.

"[T]he test adopted by Missouri courts for actionable conduct is that the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Polk v. INROADS/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "[L]iability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." *Id.*

Plaintiff directs the Court to *LaBrier v. Anheuser Ford, Inc.* 612 S.W.2d 790 (Mo. Ct. App. 1981). In *LaBrier*, the plaintiff's husband, a car salesman, took a vehicle from his dealership employer without permission. Two men from the dealership, with knowledge that the plaintiff was a "highly emotional and easily distraught individual who had suffered severe emotional problems before," accosted her at her home for 20 to 25 minutes in an attempt to track down her husband and the vehicle. *See Id.* at 792-93. In loud voices, the men threatened to issue an "all-points bulletin" to the police in order to arrest the plaintiff's husband unless she complied with their demand to tell them her husband's location. *Id.* at 792. The court found this conduct could be characterized as extreme and outrageous. *Id.* at 793.

Plaintiff also cites to a comment in the Restatement (Second) of Torts:

> The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or

6

> power to affect his interests. Thus an attempt to extort money by a
> threat of arrest may make the actor liable even where the arrest, or
> the threat alone, would not do so. In particular police officers, school
> authorities, landlords, and collecting creditors have been held liable
> for extreme abuse of their position. Even in such cases, however, the
> actor has not been held liable for mere insults, indignities, or
> annoyances that are not extreme or outrageous.

Restatement (Second) of Torts § 46 cmt. e (1965) (Doc. No. 41 at 4.) Plaintiff argues that the Restatement comment renders outrageous the act of "[d]emanding a woman act a certain way by threatening her with the arrest of her husband . . . especially if the actor threatening arrest is an authority figure such as a police officer." (Doc. No. 41 at 4.)

Missouri courts have found that complaints of unwanted sexual encounters state a claim for tort relief. In *Young v. Stensrude*, for example, the court reversed the dismissal of the plaintiff's claim for intentional infliction where she alleged that the defendant showed her a pornographic movie in a room with five men and proceeded to make obscene remarks to her. 664 S.W.2d 263, 265 (Mo. Ct. App. 1984). The court held that to uphold the dismissal of the complaint would be "to subject this plaintiff, as a matter of law, to unwilling exposure to acts which may be totally intolerable in today's civilized society." *Id.* "Whether the acts complained of are 'extreme or outrageous' . . . is a question of proof," not to be decided on a motion to dismiss. *Id.*

Conversely, Missouri courts have found a lack of outrageous conduct in numerous scenarios. In *Luster v. Columbia Mutual Insurance Company*, for example, the court found an insurance adjustor's actions in continuing to contact the plaintiffs in an effort to adjust a wrongful death claim, immediately after the death of the plaintiffs' daughter, did not rise to the level of extreme and outrageous. 624 S.W.2d 890, 892 (Mo. Ct. App.

7

1981). In *Luster*, the defendant repeatedly advised the plaintiffs, during their time of grieving immediately following the death of their daughter, that he was working for the insurance company and that in order to pay the hospital and funeral bills, certain forms would have to be signed immediately. *Id.* The plaintiff claimed outrage at the fact that the complained of contact came during their period of mourning. *Id.* The court reasoned the conduct "falls more under the category of occasional acts that are definitely inconsiderate and unkind rather than acts that are utterly intolerable in a civilized community." *Id.*

Here, even if one assumes changing mores since the *Young* decision, the Court concludes that Plaintiff has stated a claim for intentional infliction against Rainey. Rainey's position of authority as a deputy sheriff, combined with the extreme number of sexually explicit phone calls and text messages, unwanted sexual advances towards Plaintiff, and threats to arrest her husband can easily rise to the level of "extreme or outrageous".

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Rainey's motion to dismiss Count II of Plaintiff's First Amended Complaint is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of March, 2016.